UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ELIZABETH S. GIBSON,

                 Plaintiff,

      v.                                              **DECISION AND ORDER**
                                                     19-CV-1582S

COMMISSIONER OF SOCIAL SECURITY,

                 Defendant.

_____


      1.     Plaintiff Elizabeth S. Gibson brings this action pursuant to the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security that denied her application for disability insurance benefits under Title II of the Act.  (Docket No. 1.) The Court has jurisdiction over this action under 42 U.S.C. § 405(g).

      2.     Plaintiff protectively filed her application with the Social Security Administration on August 14, 2015. (R.[1] at 60.) Plaintiff alleged disability beginning on October 1, 2011, due to degenerative disc disease, herniated discs, chronic pain, inability to stand/walk for long periods, legs giving out, sciatica, neck spasms, inability to sleep, varicose veins, and high blood pressure. (R. at 58-59.) Plaintiff's application was denied, and Plaintiff thereafter requested a hearing before an administrative law judge ("ALJ"). On September 20, 2018, ALJ Roxanne Fuller held a hearing, at which Plaintiff, represented by her attorney, appeared and testified. (R. at 26-57.) Vocational Expert Joey Kilpatrick also appeared and testified by telephone. At the time of the hearing, Plaintiff

_____

[1] Citations to the underlying administrative record are designated as "R."

was 58 years old, with an eleventh-grade education and prior work experience as a retail associate. (R. at 191, 207.)

3.      The ALJ considered the case *de novo* and, on November 14, 2018, issued a written decision denying Plaintiff's application for benefits. (R. at 15-22.) On September 27, 2019, the Appeals Council denied Plaintiff's request to review the ALJ's decision. (R. at 1.) Plaintiff then filed the current action on November 22, 2019, challenging the Commissioner's final decision.[2]

4.      Both parties moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. (Docket Nos. 8, 12.) Plaintiff filed a response on July 28, 2020 (Docket No. 13), at which time this Court took the motions under advisement without oral argument. For the reasons that follow, Plaintiff's motion is granted, and Defendant's motion is denied.

5.      A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error.  See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979).  Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the

---

[2] The ALJ's November 14, 2018, decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

Commissioner's conclusion must be upheld.  See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

6.     "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  Williams ex rel. Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."  Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review."  Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

7.     The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act.  See 20 C.F.R. §§ 404.1520, 416.920.  The Supreme Court of the United States recognized the validity of this analysis in Bowen v. Yuckert, and it remains the proper approach for analyzing whether a claimant is disabled.  482 U.S. 137, 140-42, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987).

8.     The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or

mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also 20 C.F.R. § 416.920; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

9.     Although the claimant has the burden of proof on the first four steps, the Commissioner has the burden of proof on the fifth and final step.  See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984).  The final step is divided into two parts.  First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience.  Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform.  See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 416.920(a)(4); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

10.     The ALJ analyzed Plaintiff's claim for benefits under the process set forth above. At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity from her alleged onset date of October 1, 2011, through her date last insured of September 30, 2015. (R. at 17.)  At step two, the ALJ found that Plaintiff has the severe

4

impairment of degenerative disc disease. (Id.) At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any impairment(s) listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526). (R. at 21.)

11.    Next, the ALJ found that Plaintiff retains the residual functional capacity ("RFC") to perform medium work, except that she could

> occasionally climb ramps, stairs, ladders, ropes, and scaffold. She could occasionally balance, stoop, kneel, crouch, and crawl. [She] could frequently reach and overhead reach.

(R. at 18.)

12.    At step four, the ALJ found that Plaintiff is unable to perform any past relevant work. (R. at 20.) At step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (R. at 21.) Accordingly, the ALJ found that Plaintiff is not disabled. (R. at 22.)

13.    Plaintiff argues that the ALJ's determination is not supported by substantial evidence because the ALJ failed to give good reasons for the weight she gave to the opinion of treating physician Dr. Frances Ilozue. Plaintiff further argues that, after giving Dr. Ilozue's opinion little weight, the ALJ then impermissibly crafted an RFC based solely on her lay reading of the bare medical findings. Defendant argues that the ALJ properly found that Dr. Ilozue's opinion was not supported by the medical record, and that the regulations permit an ALJ to formulate an RFC based on record as a whole.

14.    An ALJ is required to consider "every medical opinion" received. 20 C.F.R. § 416.927(c).  A treating physician's opinion is entitled to controlling weight in cases where that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic

techniques and is not inconsistent with the other substantial evidence." 20 C.F.R. § 404.1527(d). When a treating physician's opinion is not consistent with the rest of the record, it does not sustain controlling weight. See Domm v. Colvin, 579 F. App'x 27, 28 (2d Cir. 2014); Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004) (per curiam).

15.     If the ALJ decides that the opinion of a treating physician is not entitled to controlling weight, she must determine how much weight, if any, to give it. In doing so, she must "explicitly consider" factors such as: "(1) the frequen[cy], length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." Selian v. Astrue, 708 F.3d 409, 418 (2d Cir. 2013) (per curiam) (citing Burgess v. Astrue, 537 F.3d 117, 131 (2d Cir. 2008)); 20 C.F.R. § 404.1527(c)(2). At both steps, the ALJ must "give good reasons in [its] notice of determination or decision for the weight [it gives the] treating source's [medical] opinion." Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004) (per curiam) (quoting 20 C.F.R. § 404.1527(c)(2)).

16.     A failure to explicitly consider every factor does not necessitate remand, as long as the reviewing Court is able to determine that the ALJ considered these factors. Estrella v. Berryhill, 925 F.3d 90, 96 (2d Cir. 2019) ("failure to 'explicitly' apply the Burgess factors when assigning weight ... is a procedural error" but does not require remand if "a searching review of the record assures [the court] that the substance of the treating physician rule was not traversed").

17.     Plaintiff submitted treatment records showing lower spine problems. Plaintiff's attorney informed the ALJ that she was trying to obtain more records from

Plaintiff's prior primary care physician, but these records do not appear to have been obtained or submitted. (R. at 29.)

18.     The evidence of record contains an MRI from June 3, 2015, that revealed degenerative changes to Plaintiff's lower lumbar spine. (R. at 271.) The record also contains notes from Plaintiff's treatment with Dr. Frances Ilozue from 2013 to 2018. On April 2, 2013, April 24, 2014, and May 22, 2014, Plaintiff visited Dr. Ilozue complaining of back pain. (See R. at 259, 267, 271.) On examination on these dates, Dr. Ilozue noted a normal gait, full range of motion in the lower extremities, but tenderness of the spine on palpation. (Id.)

19.     Plaintiff continued to complain of back pain after her date last insured. For example, on May 10, 2017, Plaintiff was seen for low back pain. (R. at 310.)  Dr. Ilozue noted lower back tenderness, and increased pain with straight leg raise bilaterally, but no instability in the lower extremities, and full range of motion bilaterally. (Id.) On June 19, 2017, Plaintiff again reported lower back pain. An examination revealed normal gait, no obvious instability in the lower extremities, intact motor strength, and full range of motion bilaterally. (R. at 308.) Dr. Ilozue assessed Plaintiff as having radiculopathy, lumbar region. (R. at 306.) On examination on October 4, 2017, Dr. Ilozue noted normal gait, no obvious instability in the lower extremities, and intact motor strength. (R. at 303) Over the course of her treatment, Dr. Ilozue prescribed motrin, gabapentin, Conzip (tramadol), physical therapy, and a TENS unit for her back pain. (See, e.g. R. at 241, 252, 253, 258, 260, 262, 264.)

20.     Plaintiff also saw pain doctor Dr. Pratibha Bansal for her neck and back pain. On examination on April 10, 2014, she had an erect standing posture, with normal

7

gait and stance. (R. at 241.) Her heel and toe walking were normal. Straight leg tests, kinetic forward flexion test, Patrick-Fabere test, and Gaenslen's sign were negative. (Id.) Muscle bulk and tone were normal, and she had full strength in all areas. (Id.) However, she had an "extensive amount of myofascial pain in the lumbar paravertebral, gluteal, piriformis, and iliotibial fascia," as well as tenderness the L5-S1 facet joints in her right and left spines. (R. at 242.) Dr. Bansal diagnosed Plaintiff with cervical disc disorder, and radiculopathy, lumbosacral region. She prescribed a TENS unit, Amitriptyline, and Feldene. (R. at 243.)

21.     The record contains three pieces of opinion evidence, all from Dr. Ilozue. In a letter dated May 3, 2017, Dr. Ilozue stated that Plaintiff was unable to work due to multiple medical conditions. (R. at 293.)  In a letter dated May 10, 2017, Dr. Ilozue opined that Plaintiff was unable to work until she was re-evaluated on June 14, 2017. Dr. Ilozue stated that Plaintiff had neuropathy affecting both legs, making it difficult to walk or stand for prolonged periods (R. at 292.)

22.     Dr. Ilozue filled out an RFC questionnaire on February 28, 2018. (R. at 330-337.) In it, she opined that Plaintiff was incapable of even low-stress jobs because she could not be in one position for any length of time. (R. at 336.) Dr. Ilozue opined that Plaintiff could not walk more than half a block, could not sit or stand for more than 15 minutes, would need to take unscheduled breaks every 10-15 minutes for 30 minutes, required the use of a cane, had to keep her legs elevated all the time, could never lift 10 or more pounds, and was likely to be absent more than 4 times per month.  (Id.) Dr. Ilozue opined that this had been the case since 2008. (Id.)

23.     The ALJ gave little weight to Dr. Ilozue's opinions, finding them inconsistent with the medical evidence in the record, particularly multiple normal findings. (R. at 20.) Plaintiff argues that the ALJ erred in not giving the "good reasons" for rejecting Dr. Ilozue's opinion.

24.     Assuming, arguendo, that the ALJ was justified in not giving controlling weight to Dr. Ilozue's opinions due to inconsistencies between the record and Dr. Ilozue's opinions, the ALJ was then required to discuss the Burgess factors in determining what weight to give the opinions. The ALJ was required to consider the frequency, length, nature, and extent of treatment; the amount of medical evidence supporting the opinions; their consistency with the remaining medical evidence; and whether the physician was a specialist, in explaining what weight she did give Dr. Ilozue's opinion. Selian, 708 F.3d 418. Here, in particular, the length of Dr. Ilozue's treating relationship with Plaintiff was a factor the ALJ should have considered, given that Dr. Ilozue's familiarity with Plaintiff's ongoing symptoms may help explain her opinions . Remand is warranted for this reason. See Greek v. Colvin, 802 F.3d 370, 375 (2d Cir. 2015) ("The failure to provide good reasons for not crediting the opinion of a claimant's treating physician is a ground for remand".)

25.     Plaintiff next argues that, after rejecting Dr. Ilozue's opinion, the ALJ impermissibly formulated an RFC based solely on the medical evidence. Defendant argues that the ALJ is permitted to formulate an RFC based on the entire record.

26.     An ALJ's decision can be supported by substantial evidence even without any medical opinions, as long as the record contains "sufficient evidence from which an ALJ can assess the [claimant's] residual functional capacity." Tankisi v. Comm'r of Soc.

Sec., 521 F. App'x 29, 33 (2d Cir. 2013) (summary order). See also Trepanier v. Comm'r of Soc. Sec. Admin., 752 F. App'x 75, 78–79 (2d Cir. 2018) (summary order) (upholding an ALJ's determination that claimant could lift up to fifty pounds where no medical opinion supported that conclusion but evidence in the record, such as the claimant's treating physician clearing him to return to work that would require him to lift up to fifty pounds, "strongly" suggested that capacity). But "[d]ecisions in this district have consistently held that an ALJ's RFC determination without a medical opinion backing it is, in most instances, not an RFC supported by substantial evidence." Smith v. Saul, No. 17-CV-6641-CJS, 2019 WL 2521188, at *2 (W.D.N.Y. June 19, 2019) (citing Clifton v. Comm'r of Soc. Sec., No. 17-CV-946(T), 2019 U.S. Dist. LEXIS 88307, at *7 (W.D.N.Y. May 24, 2019); see also Pryn v. Berryhill, No. 16-CV-315-FPG, 2017 U.S. Dist. LEXIS 65830, 2017 WL 1546479, at *9 (W.D.N.Y. May 1, 2017) ("It is unclear to the Court how the ALJ, who is not a medical professional, was able to make this determination without reliance on a medical opinion."); Dale v. Colvin, No. 15-CV-496-FPG, 2016 U.S. Dist. LEXIS 101193, 2016 WL 4098431, at *9 (W.D.N.Y. Aug. 2, 2016) ("There is no medical opinion regarding her capacity to sit, stand, walk, or lift, which are necessary activities for sedentary work. … Yet the ALJ, who is not a medical professional, somehow determined that Dale could perform sedentary work because a lumbosacral spine MRI showed "little abnormalities," a cervical MRI was "unremarkable," and "the treatment notes generally showed only a few objective findings.").

27.    Here, the record does not contain sufficient evidence from which the ALJ could assess Plaintiff's RFC. Medium work, as defined in the regulations, entails work involving "lifting no more than 50 pounds at a time with frequent lifting or carrying of

objects weighing up to 25 pounds," as well as "a good deal of walking or standing, or "sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567 (b)-(c). The ALJ stated that findings from Plaintiff's course of treatment, Plaintiff's own statements about her daily activities, and the conservative nature of her treatment supported an RFC of medium work with occasional climbing, balancing, stooping, kneeling, crouching and crawling. (R. at 18, 20.)

28.    But the medical record indicates that Plaintiff experienced persistent back pain and spinal tenderness. And Plaintiff testified that she could not lift grocery bags when shopping, could no longer care for her grandchildren because she could not lift them, and that her husband or son had to help with picking up garbage or mopping that required twisting or stooping (R. at 40-42). The ALJ mentioned this testimony in her decision, but then found that Plaintiff's daily activities supported an RFC of medium work.  This Court finds that the record, as cited by the ALJ, does not contain sufficient evidence to support an RFC of medium work.

29.    Defendant argues that an ALJ is permitted to formulate an RFC even in the absence of medical opinion evidence, based on the entire record. This is correct, but, as even the cases Defendant cites suggest, only "when the record contains sufficient evidence." Tankisi, 521 F. App'x. at 34. See Docket No. 12-1 at pp. 17-18. In Matta v. Astrue, for example, the Second Circuit held that the RFC did not need to correspond to any one medical opinion—but four medical opinions in the record informed the ALJ's determination. Matta v. Astrue, 508 F. App'x 53, 56 (2d Cir. 2013). In Currie v. Commissioner, the ALJ had three opinions to assess, as well as "sufficient evidence" from which to reach an RFC determination. Currie v. Commissioner, No. 17-CV-602(MAT),

2018 WL 5023606, at *3 (W.D.N.Y. Oct 17, 2018).  And in Wynn v. Commissioner, the ALJ had four medical opinions before it. Wynn v. Commissioner, 342 F. Supp. 3d. 340, 349 (W.D.N.Y. 2018) ("Here, the ALJ discussed four separate opinions relating to Plaintiff's work-related limitations. In other words, this is not a case where there is a complete absence of opinion evidence relating to Plaintiff's work-related limitations.").

30.     Here, after discounting Dr. Ilozue's opinion, the ALJ was left with "bare medical findings" and Plaintiff's testimony, which together do not provide sufficient evidence to reasonably suggest that Plaintiff was capable of meeting the exertional requirements of medium work. For this reason, the ALJ's RFC determination is not supported by substantial evidence.

31.     This Court also notes an inconsistency that should be resolved on remand. At the hearing, Plaintiff testified that she had stopped her earlier work as a warehouse worker—work the VE classified as medium—because the lifting and standing were too hard for her. (R. at 47.) The ALJ posed to the vocational expert a hypothetical worker able to perform medium work with some limitations—the same RFC she ultimately found for Plaintiff—and the vocational expert stated that such a worker would be able to perform Plaintiff's past work. (R. at 51). Yet the ALJ stated in her decision that Plaintiff would not be able to perform her past work, and proceeded to step five of the sequential analysis. Either Plaintiff was not able to perform her past medium work, because of her limitations, and the RFC is incorrect, or Plaintiff was able to perform her past medium work, and the ALJ erred in stating that she was not able to do so. If Plaintiff was indeed able to perform her past relevant work, then the ALJ's analysis should have stopped there, since an ability to perform past relevant work leads to a finding of not disabled. 20 C.F.R. § 416.920(a)(4).

Upon remand, the ALJ should clarify whether Plaintiff is or is not able to perform her past relevant work, and proceed with her analysis accordingly.

IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 8) is GRANTED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 12) is DENIED.

FURTHER, that this case is REMANDED to the Commissioner of Social Security for further proceedings, consistent with this decision.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.

Dated:        November 3, 2020
              Buffalo, New York

                                                    s/William M. Skretny
                                                   WILLIAM M. SKRETNY
                                                  United States District Judge